IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IPVENTURE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 11-cv-00588-RGA |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| (1) ACER, INC. | ) | |
| (2) ACER AMERICA CORPORATION | ) | |
| (3) GATEWAY, INC. | ) | |
| (4) ASUSTEK COMPUTER INC. | ) | |
| (5) ASUS COMPUTER INTERNATIONAL | ) | |
| (6) DELL INC. | ) | |
| (7) FUJITSU LIMITED | ) | |
| (8) FUJITSU AMERICA, INC. | ) | |
| (9) LENOVO GROUP LIMITED | ) | |
| (10) LENOVO (UNITED STATES) INC. | ) | |
| (11) SAMSUNG ELECTRONICS CO., LTD. | ) | |
| (12) SAMSUNG ELECTRONICS AMERICA, INC. | ) | |
| (13) TOSHIBA CORPORATION | ) | |
| (14) TOSHIBA AMERICA, INC. | ) | |
| (15) TOSHIBA AMERICA INFORMATION SYSTEMS, INC. | ) | |
| Defendants. | | |

## PLAINTIFF IPVENTURE'S RESPONSE BRIEF IN OPPOSITION TO THE ASUS DEFENDANTS' MOTION TO DISMISS, SEVER OR TRANSFER

OF COUNSEL:

Morgan Chu
Richard Birnholz
Babak Redjaian
Dorian Berger
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California  90067-4276

Steven L. Caponi (I.D. No. 3483)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, Delaware  19801
(302) 425-6400

*Attorneys for Plaintiff IpVenture, Inc.*

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS...........................................................2

III.   SUMMARY OF ARGUMENT ........................................................................................2

IV.    FACTUAL BACKGROUND .........................................................................................4

V.     THE ASUS DEFENDANTS ARE SUBJECT TO SPECIFIC JURISDICTION IN
       THE DISTRICT OF DELAWARE...................................................................................6

       A.    Specific Jurisdiction Exists Over ASUSTeK and ACI Under The
             Delaware Long-Arm Statute. ...........................................................................7

       B.    Jurisdiction Exists Over ASUSTeK and ACI Under The
             Stream-Of-Commerce Theory. .........................................................................9

       C.    Exercising Personal Jurisdiction Over Defendants Does Not Offend
             Traditional Notions Of Fair Play And Substantial Justice.................................10

VI.    VENUE IS PROPER IN THE DISTRICT OF DELAWARE.............................................11

VII.   IPVENTURE'S FIRST AMENDED COMPLAINT SUFFICIENTLY ALLEGES
       INDIRECT AND WILLFUL INFRINGEMENT AGAINST ASUS .................................11

       A.    IpVenture Has Alleged Direct Infringement By Others. ....................................12

       B.    IpVenture Sufficiently Alleged Facts Supporting Knowledge Of The
             Patents-In-Suit.................................................................................................13

VIII.  DEFENDANTS' MOTION TO DISMISS OR SEVER BASED ON IMPROPER
       JOINDER SHOULD BE DENIED ...................................................................................14

       A.    IpVenture's Claims Against ASUS Share The Same Foundation, Factual
             Background, and Common Questions To Be Joined..........................................14

       B.    ASUS Relies On Inapposite Cases. ..................................................................16

IX.    TRANSFERRING THE CLAIMS AGAINST ASUS TO NORTHERN
       CALIFORNIA IS NOT IN THE INTERESTS OF JUSTICE OR THE EFFICIENT
       ADMINISTRATION OF THIS CASE............................................................................17

       A.    ASUS' preference for Northern California Cannot Trump IpVenture's
             Rational Decision To Bring Suit Against Several Delaware Companies
             In Delaware......................................................................................................17

**Page**

B.    The Convenience Factors Are Either Neutral Or Weigh Against Transfer. ...................................................................................................................18

C.    The Adverse Effects Of Transfer On Judicial Economy And The Administration Of These Proceedings Strongly Cuts Against Transfer............19

D.    Remaining Public Interest Factors Weigh Against Transfer ............................20

X.    CONCLUSION ...........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*1st Source Bank v. Merritt,*
  759 F. Supp. 2d 505 (D. Del. 2011) ........................................................... 17

*ADE Corp. v. KLS Tencor Corp.,*
  138 F.Supp.2d 565 (D. Del. 2001) ............................................................ 19

*Apple, Inc. v. High Tech Computer Corp.,*
  2011 WL 143909 (D. Del. January 18, 2011)............................................. 18

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
  772 F. Supp. 1458 (D. Del. 1991) ............................................................... 8

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ............................................................................. 11

*Automotive Technologies Int'l, Inc. v. American Honda Motor Co., Inc.,*
  2006 WL 3783477 (D. Del., December 21, 2006)....................................... 17

*Belden Techs., Inc. v. LS Corp.,*
  626 F.Supp.2d 448 (D. Del.2009) .......................................................... 9, 11

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................. 11

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
  21 F. 3d 1558 (Fed. Cir. 1994) ................................................................. 10

*Boone v. Oy Partek Ab,*
  724 A.2d 1150 (Del.Super. 1997) ............................................................... 7

*Brands, Inc. v.Cooper Indus., Inc.,*
  2008 WL 2977464 (D. Del. 2008) ............................................................ 17

*Breckenridge Pharm., Inc. v. Metabolite Labs.,*
  444 F.3d 1356 (Fed. Cir. 2003) ................................................................... 7

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.,*
  406 U.S. 706 (1972).................................................................................. 11

*Cephalon Inc. v. Watson Pharma., Inc.,*
  629 F. Supp. 2d 338 (D. Del. 2009) ............................................................ 8

**Page(s)**

*Coughlin v. Rogers,*
 130 F.3d 1348 (9th Cir. 1997) ................................................................... 15, 16

*Cybiotronics, Ltd. v. Golden Source Elecs., Ltd,*
 130 F. Supp. 2d 1152 (C.D. Cal. 2001) ............................................................... 13

*DSU Med. Corp. v. JMS Co.,*
 471 F.3d 1293 (Fed. Cir. 2006) ............................................................................ 12

*Eastman Chem. Co. v. Alphapet, Inc.,,*
 2011 WL 6004079 (D. Del. Nov. 4, 2011) ................................................. 9, 10, 11

*Electronics for Imaging, Inc. v. Coyle and Kolbet Labs,*
 340 F.3d 1344 (Fed. Cir. 2003) .............................................................................. 6

*Eolas Tech v. Adobe Systems,*
 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010) ................................................... 19

*EON Corp. v. FLO TV Inc.,*
 802 F. Supp. 2d 527 (D. Del. 2011) ..................................................................... 14

*Hagan v. Rogers,*
 570 F. 3d 146 (3rd Cir. 2009) ............................................................................... 14

*Hamilton Partners, L.P. v. Englard,*
 11 A. 3d 1180 (Del. Ch. 2010) ............................................................................... 7

*Ho Keung, TSE v. eBay, Inc.,*
 U.S. Dist. Lexis 59675 (N.D. Cal. June 2, 2011) ............................................... 16

*Human Genome Sci., Inc. v. Genentech, Inc.,*
 2011 WL 2911797 (D. Del. Jul. 18, 2011) .......................................................... 19

*In re Google, Inc.,*
 2011 WL 772875 (Fed. Cir. March 4, 2011) ....................................................... 19

*Int'l. Shoe Co. v. Washington,*
 326 U.S. 310 (1945) ............................................................................... 6, 10, 11

*Jumara v. State Farm, Ins. Co.,*
 55 F.3d 873 (3d Cir. 1995) ............................................................... 4, 17, 18, 19

*L'Athene, Inc.  v.  EarthSpring LLC,*
 570 F. Supp. 2d 588 (D. Del. 2008) ............................................................... 17, 19

*Magnavox Co. v. APF Elec., Inc.,*
 496 F. Supp. 29 (N.D. Ill. 1980) .......................................................................... 16

**Page(s)**

*Mallinckrodt Inc. v. E-Z-EM Inc.,*
   671 F. Supp. 2d 563 (D. Del. 2009) ........................................................................ 11

*McIntyre Mach., Ltd. V. Nicastro,*
   131 S. Ct. 2780 (2011) ........................................................................ 9, 10

*Minkus Elec. Display Sys. Inc. v. Adaptive Micro Sys. LLC,*
   No. 10-666-SLR, 2011 WL 941197 (D. Del. Mar. 16, 2011)................................ 12, 13

*MobileMedia Ideas LLC v. HTC Corp.,*
   2011 WL 4347037 (E.D. Tex. Sept. 15, 2011)............................................................ 12

*Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd.,*
   476 F. Supp. 2d 1143 (N.D. Cal. 2007) .................................................................... 13

*Osteotech, Inc. v. Gensci Regeneration Sciences, Inc.,*
   6 F. Supp. 2d 349 (D. N.J. 1998) .......................................................................... 7, 8

*Oticon, Inc. v. Sebotek Hearing Systems, LLC,*
   2011 WL 3702423 (D. N.J. August 22, 2011) ........................................................ 9, 10

*Power Integrations, Inc. v. BCD Semiconductor Corp.,*
   547 F. Supp.2d, 365 (D. Del. 2008) .......................................................................... 6

*Shutte v. Armco Steel Corp.,*
   431 F.2d 22 (3d Cir. 1970)........................................................................................ 17

*Silicon On Insulator Techs., SA. v. MEMC Elec. Materials, Inc.,*
   2009 WL 423989 (D. Del. Feb. 20, 2009).................................................................. 13

*Simms v. Thomson Reuters Tax and Accounting, Inc.,*
   2011 WL 4501225 (D. Del. Sep. 28, 2011) ........................................................ 18, 19

*SouthCo, Inc. v. Fivetech Technology Inc.,*
   2011 WL 71440 (E.D. Pa. Jan. 20, 2011) ................................................................ 8

*Sprint Communications Co., L.P. v. Theglobe.com, Inc.,*
   233 F.R.D. 615 (D.Kan. 2006)................................................................................ 15

*United Mine Workers of Am.,*
   383 U.S. 715 (1966) ................................................................................................ 16

*Virgin Wireless, Inc. v. Virgin Enters., Ltd.,*
   201 F. Supp. 2d 294 (D. Del. 2002) ........................................................................ 17

*WiAV Networks, LLC v. 3Com Corp. et al,*
   2010 WL 3895047 (N.D. Cal. October 1, 2010) ...................................................... 16

**Page(s)**

*Xpoint Techs. v. Microsoft Corp.,*
  730 F. Supp. 2d 349 (D. Del. 2010) .......................................................................................... 13

**Statutes**

10 Del. C. § 3104 ..................................................................................................................... 6, 7

28 U.S.C. § 1391 ...................................................................................................................... 3, 11

28 U.S.C. § 1400 ...................................................................................................................... 11

28 U.S.C. § 1404 ...................................................................................................................... 3

35 U.S.C. § 271 ........................................................................................................................ 3

35 U.S.C. § 299 ........................................................................................................................ 15, 16

The Leahy-Smith American Invents Act, Pub. L. No. 112-29, § 299 (2011)................................. 4

**Other Authorities**

8 Donald S. Chisum, Chisum on Patents, §21.03 (1998)..................................................... 16

**Rules**

Fed. R. Civ. P. 20......................................................................................................... 4, 14, 15

Fed. R. Civ. P. 1 .......................................................................................................... 14

## I.       INTRODUCTION

In this brief, IpVenture responds to the "kitchen sink" motion to dismiss from Defendants ASUSTek Computer Inc. ("ASUSTek") and its wholly-owned subsidiary ASUS Computer International ("ACI") (together "ASUS" or "the ASUS Defendants").  In a nutshell, the District of Delaware is a proper forum for IpVenture's properly alleged claims against the ASUS Defendants for infringing several IpVenture thermal management patents.

First, there is no issue of this Court's personal jurisdiction over ASUS.  ASUS concedes it derives revenue from this District from the sale of its products.  Indeed, a trip to "Best Buy" stores in Wilmington, a few miles from the U.S. Courthouse, confirms that many models of infringing ASUS notebook computers are on sale in this District.  When a party such as ASUS directs sales of its products to residents of the forum or intends to serve the Delaware market and introduces its products into the stream-of-commerce to serve that market, it is well-established that "specific" personal jurisdiction may be exercised over that party.  Here, IpVenture's claims arise out of ASUS's manufacturing, importing and selling notebook computers through authorized retailers in the District of Delaware and elsewhere in the stream-of-commerce.  ASUS's corresponding argument that venue is improper fails for the same reasons:  ASUS is subject to personal jurisdiction and has committed acts of infringement here.

ASUS's pleading challenges also are without merit.  IpVenture's First Amended Complaint describes the importance of the infringing technology, identifies the infringing products, contains allegations reciting or providing a basis to infer that third parties using the infringing computers directly infringe, and that ASUS had knowledge of IpVenture's patents at least from the filing of the lawsuit.  D.I. 36 at ¶¶ 23, 24, 32, 41, 50, 59.  IpVenture also alleged that the infringing computers use Intel microprocessors and other "common components that raise common questions of fact as to all Defendants on at least the issues of infringement, claim construction and validity." *Id.* ¶ 23.  Similarly, joinder of the ASUS Defendants with the other Defendants thus is appropriate, and in the interests of justice, under Rule 20 of the Federal Rules and the America Invents Act.

Finally, the ASUS Defendants alternative request that the Court sever and transfer the claims against ASUS to the Northern District of California should be denied.  ASUS has not shown that

transfer promotes the interest of justice or the convenience factors so strongly to warrant dividing this case between different judges in different states.  In addition to the fact that the claims against the other Defendants on essentially the same products will be litigated here, one of the inventors on the patents, Alan Thomas, resides in Ocean City, New Jersey, within 100 miles of this Court.  Transfer does not dramatically enhance convenience, but in fact would be severely detrimental to judicial economy and the efficient administration of this case.

IpVenture respectfully requests that the Court deny ASUS's motion so the parties can prepare the case and present the common issues for resolution on a developed record.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

This is an action for patent infringement in which IpVenture has asserted four patents (all continuation applications in the same patent family) against ASUS and other computer companies.[1] On November 28, 2011, IpVenture filed a First Amended Complaint.  D.I. 36.  The First Amended Complaint added two additional patents, the '668 and '993 patents, and named as Defendants Acer, ASUS, Dell, Samsung, and Toshiba.  *Id.*  The First Amended Complaint explains the importance of thermal management functionality and how the products at issue include common components that lead to common issues of infringement and claim construction.  D.I. 36 ¶¶ 23-24.  The First Amended Complaint also alleges that ASUS infringes directly, indirectly and willfully.  D.I. 36 ¶¶ 32, 41, 50, 59. The case is at the pleading stage.   On February 21, 2012, ASUS moved to dismiss, raising issues of jurisdiction, pleading and transfer.  D.I. 65.[2]  IpVenture opposes the requested relief.

## III.    SUMMARY OF ARGUMENT

1.     The exercise of personal jurisdiction over the ASUS Defendants is consistent with the
Delaware Long-Arm statute and principles of Due Process.  ASUS, through its website and
authorized retailers in this District, has directed sales to Delaware residents and introduced

---

[1] The asserted patents are United States Patent Nos. 7,937,599 (the "'599 patent"); 7,506,190 (the "'190 patent"); 6,487,668 (the "'668 patent"); and 7,167,993 (the "'993 patent") (collectively, the "IpVenture Patents").  IpVenture filed its original complaint on July 5, 2011, naming Lenovo and Fujitsu as defendants as asserting the '599 and '190 patents.  D.I. 1.
[2] One of the Defendants, Fujitsu, exited the litigation after settling and taking a license.  On January 4, 2012, Fujitsu was dismissed from the case.  D.I. 55.  Other Defendants filed pleading motions.  D.I. 43, 70, 76.

products into the stream-of-commerce with the expectation and understanding that they will be purchased in this District.  IpVenture's allegations of infringement result in part from ASUS's sales to Delaware residents and the use of those products as they were intended.

2.  Venue is proper in the District of Delaware.  A domestic corporate defendant, such as ACI, is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  28 U.S.C. § 1404(a).  Venue is proper with respect to an alien corporation, such as ASUSTeK, in any United States District Court.  28 U.S.C. § 1391(d).

3.  IpVenture sufficiently pled indirect infringement, such as active inducement and contributory infringement under 35 U.S.C. §§ 271(b) & (c).  IpVenture alleged that the "thermal management technologies patented by IpVenture []  allow Defendant's products to perform as intended" and the ASUS computers "lack substantial non-infringing uses."  D.I. 33 ¶ 24.  As such, the First Amended Complaint fairly alleges that the technology is important to the operation of the products and that customers and users of ASUS computers are direct infringers as well.  In any event, the cases explain that there is no obligation to identify specific third party direct infringers.  ASUS's arguments may be rejected for the further reason that, at a minimum, IpVenture's allegations are sufficient with respect to acts following the filing of the First Amended Complaint.  IpVenture is entitled to rely on the pleading as providing notice and knowledge to ASUS that it was infringing and inducing and contributing to infringement of the patents-in-suit.

4.  ASUS's argument against joining ASUS with other computer companies is not well taken.  Indeed, this is precisely the kind of case where joinder is appropriate.  This is not a claim where disparate sets of patents are directed at entirely different kinds of products.  Rather, IpVenture's claims are all directed at computers that use the same Intel microprocessors with the same thermal management features, as well as other common components (such as fans and microcontrollers) to implement the infringing thermal management functionality.  Indeed, because the number of notebook manufactures is limited, the different Defendants may prove to be selling products that not only work the same, but are the same products.  In other words, the underlying acts of infringement are believed to be the same.  IpVenture's claims are

- 3 -

consistent with Rule 20 of the Federal Rules, as well as The Leahy-Smith American Invents
Act, Pub. L. No. 112-29, § 299 (2011) ("AIA"), which allows claims to be joined and brought
together when they present common questions of fact arising out of common transactions or
occurrences, such as in this case.

5.      ASUS alternative request that the claims against it be transferred to Northern California is not
in the interest of justice.  The balance of factors under *Jumara v. State Farm, Ins. Co.*, 55 F.3d
873, 879 (3d Cir. 1995), do not strongly favor transfer.  In addition to the fact that one of the
inventors lives in close proximity to this Court, transfer would adversely affect the efficient
administration of this case, multiply the burden on the parties and the Courts, and risk
inconsistent rulings on common issues.

## IV.  FACTUAL BACKGROUND

IpVenture is a technology and licensing company.  In addition to the patents-in-suit, IpVenture
works with innovators and entrepreneurs to develop products and technologies relating to electronic
eyewear (available for sale on Amazon.com), online commerce and fulfillment, wi-fi antennas,
directional sound, GPS, and sensors, among other areas.  The company's founders and principals are
Peter Tong and Douglass Thomas.  Mr. Tong is an electrical engineer with a Ph.D. from the California
Institute of Technology (Cal Tech).  Mr. Tong also has a law degree and an MBA.  Douglass Thomas, a
named inventor on the Patents-in-Suit, is an engineer and a well-regarded patent attorney practicing in
Northern California.  Douglass Thomas has prosecuted and licensed patents on his inventions,
including the patents-in-suit, which he invented with his father, Alan Thomas.  The face page of the
patents-in-suit lists Alan Thomas' address in Ocean City, New Jersey.

The four patents-in-suit are each entitled "Thermal and Power Management for Computer
Systems."  All of the patents are continuation applications that share the same disclosure (but have
different claims) and resulted from an original patent application filed on June 20, 1994.  The four
patents-in-suit are part of a family of ten patents that issued from the same original application.

IpVenture's patents cover fundamental thermal and power management techniques that are
broadly implemented in today's personal computers, including notebook computers.  In the early
1990's, when Douglass and Alan Thomas conceived of the inventions claimed in the patents, the focus

in the computer industry was on ever-higher processor speeds, with thermal and power management little more than an afterthought. But as computer processors get faster and smaller, they run hotter, resulting in a greater need to prevent the processors from overheating while maintaining performance. Speeding up a fan can increase cooling, but it also increases power consumption and noise. Slowing down the frequency at which a processor operates (referred to as "throttling") reduces both power consumption and heat, but by itself it can reduce performance. The IpVenture patents[3] address this problem by disclosing and claiming systems and methods that "facilitate intelligent control of a processor's clock frequency and/or a fan's speed so as to provide thermal and/or power management for the computing device." *See, e.g.,* '668 patent, Abstract.

The named Defendants in this case are the ASUS Defendants, as well as other computer companies Acer and its subsidiary Gateway, Dell, Fujitsu (no longer a party), Lenovo, Samsung, and Toshiba. IpVenture alleges that ASUS infringes, directly and indirectly, with respect to ASUS-branded computers that contain thermal management features and functionality claimed in the patents-in-suit. D.I. 36 ¶¶ 32, 41, 50, 59. The thermal management functionality allows the products to perform as intended and is material to the operation of the computers. *Id.* at ¶ 23-24.

ASUSTeK is a multi-national technology and consumer electronics corporation with its headquarters in Taipei, Taiwan. It touts itself as one of the largest such companies in the world and one of the world's largest manufacturers of notebook computers. Ex. 1 at 58.[4] ASUSTeK's own documentation establishes it directs the activities of subsidiaries, including ACI. *Id.* at 4-5, 60, 66-67.

ACI, a wholly-owned United States subsidiary of its corporate parent ASUSTeK (*Id.* at 131), is ASUSTeK's U.S. "sales and repair service center." *Id.* ACI is run as an arm of ASUSTek's global operation. Websites run by ACI directed at customers in the United States bear the copyright footer identifying ASUSTeK as the owner. Exs. 6, 7, 8. ACI employees receive ASUSTeK stock dividends and bonuses. Ex. 1 at 57, 107. ACI's Chairman, Jonney Shih, is the chairman of ASUSTeK. *Id.* at 16.

---

[3] The IpVenture patents have been examined extensively in the USPTO. The front pages of the patents show the long list of prior art the PTO considered when granting the patents. Several companies have licensed the patents, including Sony, Panasonic, and Fujitsu, among others.

[4] ASUSTeK's 2010 annual report stated that "ASUS is the world number one brand in Europe, Asia, and America" and that "ASUS is a dominant brand name in [the] market." Ex. 1 at 60.

ASUSTeK consolidates and reports ACI's financial statements with ASUSTeK's.  *Id.* 1 at 87.

ASUS products are sold in this District.  ACI also manages relationships with its authorized resellers who sell ASUS products throughout the United States, including Delaware.  Currently ASUS has 69 retail partners it has authorized to sell ASUS notebook computers.  Ex. 2.  Of these retailers, all had an online presence offering the sale of notebook computers.  Ex. 8.  A number of the stores including Best Buy and CompUSA had physical stores located in the state of Delaware.  Many of these retail stores, such as Best Buy stores in Wilmington, appear to be selling multiple models of ASUS notebooks to Delaware consumers.[5]  Ex. 8.  ASUS concedes in its Motion that it derives revenue from the sale of its computers in this District.  D.I. 36 at 5.  One of ASUS's manufacturers for notebooks is believed to be Pegatron, which also is believed to manufacture for other Defendants, such as Toshiba.  Exs. 9 and 10.

## V.     THE ASUS DEFENDANTS ARE SUBJECT TO SPECIFIC JURISDICTION IN THE DISTRICT OF DELAWARE

In analyzing personal jurisdiction, the court engages in a two-step inquiry: (1) whether the state's long-arm statute extends to this defendant; and (2) whether the assertion of personal jurisdiction would violate due process.  *Electronics for Imaging, Inc. v. Coyle and Kolbet Labs*, 340 F.3d 1344, 1348 (Fed. Cir. 2003); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (assertion of jurisdiction must not "not offend traditional notions of fair play and substantial justice.").  There is specific jurisdiction over the ASUS Defendants under § 3104(c)(1) of the Long Arm statute arising from their sale of infringing devices in the District of Delaware.  There also is specific jurisdiction under the stream-of-commerce doctrine based on ASUS targeting and serving the Delaware market.[6]

---

[5] ACI runs websites accessible to residents of Delaware.  The websites include: promos.asus.com, which provides individuals anywhere in the United States with information on where to purchase ASUS notebooks and other ASUS products (Ex. 3); asus.com/Notebooks/, which provides sales marketing and specification documents relating to ASUS notebooks (Ex. 4); and support.asus.com (Ex. 8).  ACI also operates the ASUS "eStore," which is accessible in Delaware.  Ex. 5.  The eStore sells computer peripherals and refurbished and clearance laptops directly to consumers.

[6] Delaware's Long-Arm Statute is interpreted to the fullest extent allowed by the Due Process clause. *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp.2d, 365, 370 (D. Del. 2008) ("[T]he only limit placed on [Delaware's long-arm statute] is that it remain within the constraints of the Due Process Clause.").

### A.     Specific Jurisdiction Exists Over ASUSTeK and ACI Under The Delaware Long-Arm Statute.

Specific jurisdiction exists over the ASUS Defendants based on the Defendants directing sales of infringing products to Delaware residents.  Delaware's long arm statute provides, in relevant part, that personal jurisdiction is proper over any nonresident who, in person or through an agent: " (1) Transacts any business or performs any character of work or service in the State; . . ."  10 Del. C. § 3104(c). Subsection (1) grants specific jurisdiction.  *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del.Super. 1997).  Specific jurisdiction may be established by "isolated and sporadic" contacts or "even a single act;" all that is required is that "the defendant purposefully directed its activities at residents of the forum [and that] the claim arises out of or relates to those activities." *Breckenridge Pharm., Inc. v. Metabolite Labs.*, 444 F.3d 1356, 1363 (Fed. Cir. 2003).  Under Delaware law, "a single transaction is sufficient to confer [specific] jurisdiction where the claim is based on that transaction"' *Hamilton Partners, L.P. v. England*, 11 A. 3d 1180, 1196 (Del. Ch. 2010).

The Defendants sale of computers in the District of Delaware qualify as "transact[ing] business" in fulfillment of 10 Del. C. § 3104(c)(1).  ASUS brand computers are available for sale throughout the State of Delaware including at Best Buy and CompUSA stores.  At the Best Buy store on Ferrand Drive a mere six miles from the Delaware Federal Court House ten different ASUS model notebook computers are available for purchase. Ex. 8.  This alone is sufficient to establish specific jurisdiction over ASUS.  In addition to selling computers through its authorized retailers to Delaware customers, ASUS sells refurbished computers directly to Delaware residents through its eShop (Ex. 5 and 6), repairs computers in behalf of Delaware residents (*Id.*), and markets products to Delaware residents.  In addition, ASUS provides warranties for computers sold in the district of Delaware.  Ex. 7. Each of these actions directed at Delaware residents satisfy the "any" business transactions prong of the Delaware Long Arm Statute.

Defendants argue specific jurisdiction is inappropriate because Delaware sales are insignificant "totaling less than .02% of all revenue."  D.I. 66 at 7.  Defendants' citation of case law is misplaced as the cases cited relate to general jurisdiction.  For specific jurisdiction "any" transaction, with the forum sate, no matter the size will qualify.  *Osteotech, Inc. v. Gensci Regeneration Sciences,*

*Inc.*, 6 F. Supp. 2d 349, 354 (D. N.J. 1998) (Specific jurisdiction can be based on a single sale, the argument that sales are "a tiny fraction of its total sales is not persuasive."). Defendants' reliance on the amount of sales to disclaim specific jurisdiction "confuses the nature of the contacts involved in analyzing specific and general jurisdiction." *Id.*; *SouthCo, Inc. v. Fivetech Technology Inc.*, 2011 WL 71440, at *10 (E.D. Pa. Jan. 20, 2011) ("Courts have concluded that a single sale into a forum by a non-resident defendant is sufficient.").

To the extent Defendants argue that the sale of infringing devices through authorized resellers, the direct sale of computers through ASUS's eShop, and warranties provided to Delaware customers only applies to ACI, and not ASUSTeK, this argument is misplaced. ACI is controlled by ASUSTeK and the actions of ACI must be imputed to the parent corporation ASUSTeK, under Delaware's agency doctrine. Under Delaware Law, for the purposes of establishing jurisdiction the acts of a subsidiary can be attributed to the parent "where the subsidiary acts on the parents behalf or at the parent's direction." *Cephalon Inc. v. Watson Pharma., Inc.,* 629 F. Supp. 2d 338, 348 (D. Del. 2009). There is no question that ACI is an agent of ASUSTek. The factors used to determine whether such agency exists include "the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business." *Applied Biosystems, Inc. v. Cruachem, Ltd*., 772 F. Supp. 1458, 1463 (D. Del. 1991). Here there is significant overlap between the officers of ASUSTeK and ACI. ACI's Chairman, Jonney Shih, is the chairman of ASUSTeK. Ex. 1 at 16. Ivan Ho the President of ACI was until March 2010 serving concurrently as a director at ASUSTeK. *Id.* at 41. T.H. Tung one of the founders of ASUSTeK is a director at ACI and until June 2008 also served as a director at ASUSTeK. Ex. 11 at 21. ASUSTeK has made repeated statements regarding its control over wholly-owned subsidiaries such as ACI. The control exercised by ASUSTeK over ACI includes "the ability to control the financial, operating and human resources functions . . . . the authority to appoint more than half of the members of the board of directors." Ex. 1 at 121. Tight financial links bind ACI to ASUSTeK. ASUSTeK is the parent corporation and 100% owner of ACI. Ex. 1 at 131. ASUSTeK consolidates and reports ACI's financial statements with ASUSTeK's. Ex. 1 at 87. [7] *Applied Biosystems,* 772 F. Supp. at 1463

---

[7] ASUS puts forward the argument that its Singapore subsidiary acts as a middle man between ASUSTeK

(consolidated financials a factor in determining agency).   ASUSTeK also is involved in the day to day operations of ACI.   Webpages such as the ACI homepage contain branding of for both ASUSTeK and ACI.   Exs. 3 and 4. The ASUS annual report repeatedly refers to ASUS as encompassing both ASUS and its wholly owned subsidiaries which coordinate their work.   Ex. 1 at 2.

> **B.    Jurisdiction Exists Over ASUSTeK and ACI Under The Stream-Of-Commerce Theory.**

Even if section (c)(1) of the Delaware long-arm statute is not met, the ASUS Defendants are subject to jurisdiction under Delaware's well-recognized stream-of-commerce doctrine.   Under the stream-of-commerce doctrine, personal jurisdiction will be found where a defendant has an: "(1) an intent to serve the Delaware market; and (2) that this intent results in the introduction of the product [at issue] into the market and that plaintiffs cause of action arises from injuries caused by that product." *Eastman Chem. Co. v. Alphapet, Inc.,*. 2011 WL 6004079, *16 (D. Del. Nov. 4, 2011) (citing *Belden Techs., Inc. v. LS Corp.*, 626 F.Supp.2d 448, 456 (D. Del.2009).   These requirements are easily met.

First, ASUS intended to serve the Delaware market.   ASUS contracted with Best Buy, Staples, Office Depot, and Comp USA to offer and sell the infringing products.   Ex. 2.   The ASUS website provides a listing of resellers available in Delaware.   Ex. 2.   ASUS offers support to Delaware customers through its web site.   Ex. 7.   And ASUS ships and sells computer related products directly to Delaware residents through its eShop.   Ex. 5.   Defendants cite *Oticon, Inc. v. Sebotek Hearing Systems, LLC*, 2011 WL 3702423 at *8 (D. N.J. August 22, 2011) for the proposition that "targeting the national market is not enough to impute jurisdiction to all the forum states."   D.I. 77 at 8.   Yet, unlike in *Oticon* here the defendants have  targeted the Delaware market through authorizing resellers to sell products, identifying locations to purchase in Delaware, making direct sales through their eShop to Delaware customers, and providing support and marketing materials to the Delaware market.

Defendants also incorrectly apply the Supreme Court's decision in *J. McIntyre Mach., Ltd. V. Nicastro*, 131 S. Ct. 2780 (2011) to argue against jurisdiction.   *Nicastro* was a splintered decision with no majority.   Courts in this jurisdiction have recognized the uncertainty of drawing any definite rules

---

and ACI.  However, ASUS's 2010 Annual report presents a much closer relationship where ACI is a direct subsidiary of ASUSTeK.   Ex. 1 at 193.

from the various splintered opinions in *Nicastro*. In *Oticon,* (cited by Defendants) the Court wrote, "Nicastro does not clearly or conclusively define the breadth and scope of the stream[-]of[-]commerce theory, as there was not a majority consensus on a singular test." 2011 WL 3702423 at *9. In *Eastman Chem. Company v. Alphabet Inc.*, the Court held that the impact of *Nicastro* was "unclear" and it might be valid law for a party to establish a stream-of-commerce argument through the intent to serve the national market. *Eastman* noted "Justice Breyer's opinion (along with the three-justice dissent) suggests that intent to serve the national market, when coupled with other factors, remains a viable basis for the exercise of jurisdiction under stream-of-commerce theory." 2011 WL 6004079 at *16. In any event, ASUS has targeted the Delaware market. Independently, ASUS is a large manufacturer with a significant volume of sales in the district which would be sufficient for Justice Breyer's stream-of-commerce test.[8] ASUS has injected infringing goods into the stream of commerce, with the intent and expectation that they serve the Delaware market, subjecting ASUS to jurisdiction in this District.

## C.   Exercising Personal Jurisdiction Over Defendants Does Not Offend Traditional Notions Of Fair Play And Substantial Justice.

Defendants' national presence and purposeful activities into the District are such that they should reasonably be expected to submit to personal jurisdiction in Delaware.[9] Due process is satisfied if the Court finds certain minimum contacts between the defendant and the forum State, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The fact that ASUS computers can be

---

[8] Under the stream of commerce doctrine sales volume much smaller than that of ASUS has allowed the assertion of personal jurisdiction. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F. 3d 1558, 1571 (Fed. Cir. 1994) (The Federal Circuit found that one need only look to sale numbers not percentage of total sales volume when determining whether the stream of commerce doctrine applied. The Court found that cases involving the sale of as little of 25,000 dollars worth of goods through a distribution channel into the forum state qualified under the stream of commerce doctrine. ).

[9] ASUSTeK and ACI has litigated several cases in this district and has not moved to dismiss based on a lack of personal jurisdiction. For example, *Xpoint Technologies Inc. v. Microsoft Corporation et al*. (D. Del. Filed 2009) both ASUS Computer International and ASUSTeK were both defendants. It appears that ASUS litigated the case for two years, proceeded as far as exchanging claim term charts, and never filed a motion objecting to personal jurisdiction over either defendant. Similarly, in *Magnequench International Inc. vs. Sony Corporation* (D. Del. Filed March 2004) both ASUSTeK and ACI were defendants and the case was litigated for two years, before settling, and without a motion for lack of personal jurisdiction.

purchased at a local Best Buy confirms that it is not unfair or against principles of substantial justice for ASUS to defend patent infringement allegations in this District. ASUS's targeting of the general market coupled with ASUS's size and acknowledgment that it derives revenue from the District are more than sufficient to provide sufficient minimum contacts. *Id*.[10]

## VI.   VENUE IS PROPER IN THE DISTRICT OF DELAWARE

The ASUS Defendants' challenge to venue fails for the same reasons as their personal jurisdiction arguments. An infringement suit may be brought in any judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). For venue purposes, a domestic corporate defendant, such as ACI, reside[s] in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. *Id.* § 1391(c); *see also Belden Techs., Inc. v. LS Corp.,* 626 F. Supp. 2d 448, 454 (D. Del. 2009). For foreign corporations, such as ASUSTeK, venue is proper in any United States District Court. *Id.* § 1391(d) ("An alien may be sued in any district."); *see also Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.,* 406 U.S. 706, 714 (1972) (holding that section 1391(d) supersedes the patent venue statute, § 1400(b)). Because this Court has personal jurisdiction over the ASUS Defendants, venue in this District is proper.

## VII.   IPVENTURE'S FIRST AMENDED COMPLAINT SUFFICIENTLY ALLEGES INDIRECT AND WILLFUL INFRINGEMENT AGAINST ASUS

To withstand a motion to dismiss, a complaint need not make detailed factual allegations, but must make allegations sufficient to "raise a right to relief above the speculative level." *Mallinckrodt Inc. v. E-Z-EM Inc. (Mallinckrodt II),* 671 F. Supp. 2d 563, 568 (D. Del. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Where a complaint's factual allegations are sufficient to allow a court to draw a "reasonable inference that the defendant is liable," the complaint is sufficiently to survive a motion to dismiss. *Id. (*quoting *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)).

ASUS's arguments are that IpVenture has not alleged direct infringement by ASUS or a third

---

[10] Although IpVenture submits that the record is more than sufficient to deny ASUS's motion, if this Court has questions regarding personal jurisdiction at this time, IpVenture requests an opportunity to conduct jurisdictional discovery. *Eastman Chem. Co.*, 2011 WL 6004079 at *16.

party; IpVenture has not sufficiently alleged overt acts for induced or contributory infringement; and that IpVenture has not alleged ASUS had knowledge of the patents.  ASUS's arguments are incorrect.

### A.      IpVenture Has Alleged Direct Infringement By Others.

IpVenture has sufficiently alleged facts from which direct infringement by others can be inferred.  The First Amended Complaint alleges that "Defendants have employed the thermal management technologies patented by IpVenture to allow Defendants' products to perform as intended." D.I. 33 ¶ 24.  The pleading also alleges that the infringing "lack substantial non-infringing uses." D.I ¶ 32, 41, 50, 59.  These allegations are sufficient to put ASUS on notice that it is inducing and/or contributing to the infringement of the IpVenture patents with respect to the use of the infringing computers by customers and users.

To the extent ASUS is arguing that IpVenture has not adequately identified *specific third party infringers,* this Court's decisions, like the decisions of other courts, establish that there is no need to do so.  *See, e.g., Minkus Elec. Display Sys. Inc. v. Adaptive Micro Sys. LLC,* 2011 WL 941197, at *3 (D. Del. Mar. 16, 2011) ("Plaintiff need not plead that a specific third party directly infringes the patent-in-suit in order to state a claim for indirect infringement"); *MobileMedia Ideas LLC v. HTC Corp.,* 2011 WL 4347037, at *3 (E.D. Tex. Sept. 15, 2011) (complaint which indicated "that [defendant's] customers would necessarily be the direct infringers with respect to the indirect infringement claims" adequately pled third-party infringement necessary for pleading inducement claim).  *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293 (Fed. Cir. 2006), relied on by Dell, does not compel a different result.  *DSU Medical* does not hold that a complaint identify specific third party infringers.  The case arose in the context of reviewing the record after trial, and held that after a full trial that there was evidence of direct infringement by another party.  *Id.* at 1311.

Moreover, to the extent that ASUS is arguing that IpVenture has not adequately identified *specific products* used by third parties, this Court's prior decisions similarly foreclose this argument as well.  To plead inducement, a plaintiff must allege direct infringement but need not identify the accused device used by the third party with any more specificity than that required to plead direct infringement.  *See, e.g., Minkus,* 2011 WL 941197, at *3.  And neither Rule 8 nor Form 18 requires a

plaintiff to identify specific products by name; it is enough to "identify a general category of products," as IpVenture has done here. *Xpoint Techs. v. Microsoft Corp.,* 730 F. Supp. 2d 349, 353 (D. Del. 2010) (finding identification of products by functional attributes sufficient) (citing *Silicon On Insulator Techs., SA. v. MEMC Elec. Materials, Inc.,* 2009 WL 423989, at *2 (D. Del. Feb. 20, 2009) (holding that identification of "silicon on insulator wafers and other engineered semiconductor substrates" was sufficient)).  IpVenture's identification of "ASUS brand computers, including notebook computers" with thermal management attributes relevant to the claims is sufficient for pleading purposes.  D.I ¶ 32, 41, 50, 59.

## B.    IpVenture Sufficiently Alleged Facts Supporting Knowledge Of The Patents-In-Suit

The First Amended Complaint also adequately pleads ASUS's knowledge of the patents, as well as ASUS's infringement since at least the filing of the First Amended Complaint.  Delaware courts have held that the filing of a complaint alleging infringement of a patent gives the defendant knowledge of that patent, and thus supports a claim of indirect infringement after the filing date.  *See Minkus,* 2011 WL 941197, at *4 (holding that because "all defendants will be deemed to have knowledge of the '174 patent as of the date the complaint was filed," the complaint adequately stated a claim for damages from induced infringement for events occurring after the filing of the complaint); *see also Monolithic Power Sys., Inc. v. 02 Micro Int'l Ltd.,* 476 F. Supp. 2d 1143, 1158 (N.D. Cal. 2007) (The defendant "may be liable for conduct occurring after [the complaint was served]" even though "[the plaintiff] does not proffer evidence that [the defendant] had actual knowledge of the patents and potential infringement prior to being served."); *see also Cybiotronics, Ltd. v. Golden Source Elecs., Ltd,* 130 F. Supp. 2d 1152, 1166 (C.D. Cal. 2001) (lack of allegations of knowledge of asserted patents prevented claims of indirect infringement for the time period *prior* to service of the complaint).  Here, IpVenture's First Amended Complaint, filed November 28, 2011 (D.I. 36) and served on ASUS December 1, 2011 (D.I. 42), is sufficient to establish knowledge of the patents-in-suit and the alleged infringement at least as of that date.

Further, IpVenture's allegations of publicly available facts and press releases and news articles from July 2009 that specifically reference the patents-in-suit, all continuation patents stemming from

- 13 -

the same parent application.  It is reasonable to infer knowledge from these facts.  This situation is unlike that in *EON Corp. v. FLO TV Inc.*, 802 F. Supp. 2d 527, 532-33 (D. Del. 2011), on which ASUS relies, which involved allegations relating to the knowledge of the licensing of other patents that cited the patents in suit as prior art.  This is different from the allegations here, that ASUS would have been made aware of the patents and its infringement through the articles and press releases relating to the patents and litigation on the patents.  (D.I. ¶¶ 32, 41, 50, 59).

## VIII.  DEFENDANTS' MOTION TO DISMISS OR SEVER BASED ON IMPROPER JOINDER SHOULD BE DENIED

The Federal Rules of Civil Procedure begin by stating that they "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  To this end, IpVenture has joined in this case infringement claims against the ASUS Defendants and the other Defendants because these claims present common questions of fact and arises out of common transactions or occurrences.  The joinder of the ASUS Defendants, so the claims against the same and related products can be disposed of efficiently in one action, is consistent with both Rule 20 of the Federal Rules as well as the joinder provision of Section 299 under the America Invents Act ("AIA") even assuming it applied.  The Third Circuit has held "[f]or courts applying Rule 20 and related rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."  *Hagan v. Rogers*, 570 F. 3d 146, 153 (3rd Cir. 2009).

### A.  IpVenture's Claims Against ASUS Share The Same Foundation, Factual Background, and Common Questions To Be Joined.

IpVenture's patent infringement claims against Defendants are all directed at the same infringing products.  ASUS, like the other Defendants, manufactures or sells infringing computers that use "common components and/or software, including one or more Intel microprocessors, one or more cooling fans, [and an] operating systems (such as Microsoft Windows operating system)" to implement IpVenture's patented thermal management functionality.  D.I. 36 at ¶ 23.  In other words, the allegations are not just that the Defendants all infringe, but that the Defendants are alleged to

infringe by using the same components and technology.[11]

Rule 20 specifically contemplates joinder when the right to relief arises out of the same "series of transactions or occurrences" and when "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  The circumstances of the ASUS Defendants implementation of thermal management is a series of occurrences having a "similarity in the factual background of [IpVenture's] claim[s]" satisfies the "same transaction" prong. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).

Defendants ignore the purpose of the joinder rules, which are to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.   If the Court grants Defendants' motion, the exact opposite will occur.  The claims of the same patents will be construed multiple times, prior art will be analyzed and argued numerous times, validity will be addressed and determined repeatedly, expert witnesses will opine on the same common questions more than once, and fact witnesses will be deposed over and over again.  "The drafters devised Rule 20(a) 'to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.' The court construes Rule 20(a) broadly because 'joinder of claims, parties and remedies is strongly encouraged.'"  *Sprint Communications Co., L.P. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 616 (D.Kan. 2006).

Although the America Invents Act is not applicable for this case because IpVenture's original complaint was pending before the AIA was enacted (see AIA section 19), the same result obtains under the new law, which will be codified in a new 35 U.S.C. § 299.  The joinder standard in the AIA Section 299 is nearly identical to the joinder standard set forth in Rule 20, but sharpens the language to provide that the right to relief arises out of the same series of transactions or occurrences "relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and that (2) questions of fact common to all defendants or counterclaim defendants will arise in the action." 35 U.S.C. § 299(a).  The AIA goes on to state that defendants may not be

---

[11] ASUS and many of the other defendants appear to share one or more common manufacturers for their infringing products. Exs. 9 and 10. The extent the infringing products although branded differently are functionally the same is a topic for further discovery in the case.

joined "based solely on allegations that they each have infringed the patent or patents in suit." *Id.*, § 299(b). IpVenture has not alleged solely that the defendants are infringing the patents, but that the Defendants are doing so by employing the same accused process using common components. The questions of fact that will arise are not just related, they are expected to be the same questions. As the Supreme Court noted in describing the purpose behind joinder rules, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am.*, 383 U.S. 715, 724 (1966).

It also is not clear what ASUS's motion would accomplish, even if it were granted. Rule 42(a) allows for the consolidation of cases presenting a "common question of law or fact." Even if the Court agreed with ASUS, the Court may, in its discretion, "ignore the misjoinder by finding that the actions should be consolidated anyway." 8 Donald S. Chisum, Chisum on Patents, §21.03[6][c] (1998), citing *Magnavox Co. v. APF Elec., Inc.*, 496 F. Supp. 29 (N.D. Ill. 1980).

## B.        ASUS Relies On Inapposite Cases.

This case also is unlike the cases that ASUS cites which involved claims against divergent defendants with unrelated products. For example, *WiAV Networks* involved 68 defendants varyingly accused of infringing 34 patents. *WiAV Networks, LLC v. 3Com Corp. et al,* 2010 WL 3895047 at *1 (N.D. Cal. October 1, 2010). In *WiAV Networks*, the court referred to the case as a "sprawling patent-infringement action against 68 different companies . . . across the United States, Canada, Japan, China, Taiwan, Belgium, Finland, and Sweden. *Id. Coughlin*, a non-patent case, involved 49 separate and distinct petitions pending before the Immigration and Naturalization Service (INS). 130 F.3d at 1349. Defendants reliance on *Ho Keung, TSE v. eBay, Inc.*, U.S. Dist. Lexis 59675 (N.D. Cal. June 2, 2011) is equally misplaced. The products in *Ho Keung* were different websites that involved different functionalities and different software that worked differently across the accused products. *Id.* at 2.

As set forth above, this is a patent case involving only four patents, which are asserted equally against just six defendants, all of whom have similar infringing products. IpVenture's complaint identifies facts establishing significant overlap and commonalities between defendants (same microprocessors, fans, operating systems and cooling technologies).

IX.   **TRANSFERRING THE CLAIMS AGAINST ASUS TO NORTHERN CALIFORNIA IS NOT IN THE INTERESTS OF JUSTICE OR THE EFFICIENT ADMINISTRATION OF THIS CASE**

As a fallback to their motion to dismiss, the ASUS Defendants seek transfer to the Northern District of California.  It is the movant's burden to demonstrate that the balance of interests strongly weighs in favor of transferring an action to another forum.  *Virgin Wireless, Inc. v. Virgin Enters., Ltd.*, 201 F. Supp. 2d 294, 300 (D. Del. 2002).  In light of the moving party's burden "to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of transfer."  *1st Source Bank v. Merritt,* 759 F. Supp. 2d 505, 510 (D. Del. 2011).  ASUS cannot meet its heavy burden to demonstrate that the balance of convenience factors (under the *Jumara* factors) **strongly** supports transfer.  *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970) ("[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.").  Although the balance here cuts against disrupting the efficient administration of this case before this Court, even if the balance slightly favored transfer, the motion should be denied.

A.   **ASUS' preference for Northern California Cannot Trump IpVenture's Rational Decision To Bring Suit Against Several Delaware Companies In Delaware**

ASUS's first argument is that it prefers the Northern District of California.  IpVenture, however, prefers Delaware.  "[T]he court should not disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum." *Automotive Technologies Int'l, Inc. v. American Honda Motor Co., Inc.,* 2006 WL 3783477, *2 (D. Del., December 21, 2006).  IpVenture's choice is rationale.  Several of the Defendants (Gateway, Inc., Dell Inc., Lenovo (United States) Inc., and Toshiba America, Inc.) are incorporated in Delaware, and one of the inventors Alan Thomas lives in Ocean City, New Jersey.  Although IpVenture is not based in Delaware, IpVenture's choice is entitled to deference when it has a rational basis for having selected this forum.  *Acuity Brands, Inc. v.Cooper Indus., Inc.,* 2008 WL 2977464, at *2 (D. Del. 2008); *L'Athene, Inc.  v.  EarthSpring LLC,* 570 F. Supp. 2d 588, 594-95 (D. Del. 2008) (citing *Shutte,* 431 F.2d at 25).  IpVenture's choice of Delaware thus weighs against transfer where, as here, a plaintiff has made the rational and legitimate decision to bring this case where most defendants in the action are incorporated.

**B.      The Convenience Factors Are Either Neutral Or Weigh Against Transfer.**

The other private interest factors support transfer.  The third *Jumara* factor -- convenience of

the witnesses – is neutral or favors Delaware.  First, ASUS overlooks the fact that the Third Circuit

considers convenience of the witnesses "only to the extent that the witnesses may actually be

unavailable for trial." *Jumara*, 55 F.3d at 879.  ASUS has not identified witnesses who would be

unavailable, nor has it stated that any of its witnesses would be unable to attend a trial in Delaware.

Moreover, the convenience factor is primarily concerns ***non-party*** witnesses that may be

involved at trial. ASUS's contentions regarding their own witnesses (they identify none) and

documents "carry no weight in the 'balance of convenience' analysis since each party is able, indeed,

obligated to procure the attendance of its own employees for trial." *Simms v. Thomson Reuters Tax

and Accounting, Inc.,* 2011 WL 4501225, at *4-5 (D. Del. Sep. 28, 2011).  With regard to non-parties,

ASUS has not demonstrated that any non-party would be required at trial, let alone that trial in

California would be substantially more convenient for any such witness.  IpVenture notes that the

majority of ASUS employees knowledgeable about the thermal management of ASUS computers are

likely to reside in Taiwan.  Those witnesses would need to travel no matter what.  While IpVenture

acknowledges that the flight is shorter to California, that modest travel difference is not sufficient to

warrant disrupting this case in this Court in favor of a separate and duplicative action in California.

Whether the litigation occurs in Delaware or California will not change the convenience factor for

such witnesses.  ASUS also has not acknowledged that one of the inventors, Alan Thomas, as

indicated on the face of the patents-in-suit, resides in Ocean City, New Jersey, which is far closer to

this Court than California should he need to appear.

The fourth *Jumara* factor -- the convenience of the parties as indicated by their relative

physical and financial condition – does not favor transfer.  Defendants do not contend that they will

suffer a financial hardship by litigating this case in Delaware.  *See Apple, Inc. v. High Tech Computer

Corp.*, 2011 WL 143909, at *3 (D. Del. January 18, 2011) (transfer denied where movant "failed to

demonstrate a specific physical or financial condition that would make litigating in Delaware

burdensome.")  Indeed, "[w]hen transfer is sought by a defendant with operations on a national or

international scale, that defendant "must prove that litigating in Delaware would pose a unique or

unusual burden on [its] operations." *Simms,* 2011 WL 4501225, at *1 (citing *L'Athene, Inc.,* 570 F. Supp. 2d at 592).  Defendants have made no such showing.  This factor weighs against transfer.

The fifth *Jumara* factor -- location of books and records – does not favor transfer.  This Court has repeatedly recognized "recent technological advances have reduced the weight of this factor to virtually nothing." *Simms,* 2011 WL 4501225, at *6.  Given defendants' sophistication and ability to store and transport information, this factor should be given limited weight.  *ADE Corp. v. KLS Tencor Corp.,* 138 F.Supp.2d 565, 571 (D. Del. 2001).

### C.     The Adverse Effects Of Transfer On Judicial Economy And The Administration Of These Proceedings Strongly Cuts Against Transfer.

Perhaps the clearest reason why the case should not be transferred is the obvious deleterious effect transfer would have on judicial efficiency and economy.  Issues of judicial economy often present the deciding factor in a transfer analysis.  *Human Genome Sci., Inc. v. Genentech, Inc.,* 2011 WL 2911797, at *11 (D. Del. Jul. 18, 2011).  Where related lawsuits exist, it is in the interests of justice to permit suits involving the same issues to proceed before one court.  *Air Prods. and Chems., Inc. v. MG Nitrogen Servs., Inc.,* 133 F. Supp. 2d 354, 357 (D. Del. 2001) ("[T]he interests of judicial economy dictate that an action involving the same patents-in-suit . . . should not proceed simultaneously in two different district courts").  In *Eolas Tech v. Adobe Systems,* a Court denied a motion to transfer a case where numerous other defendants would remain in the jurisdiction.  2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010) "[p]ractical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer.").  The Federal Circuit upheld the decision of the *Eolas* Court pointing out that "judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective." *In re Google, Inc.*, 2011 WL 772875, at *2 (Fed. Cir. March 4, 2011).

Here, ASUS is advocating that the Court structure the litigation such that one party is severed and the claims against that party transferred to the Northern District of California, while the litigation against the remaining Defendants proceeds in Delaware.  Given the overlapping factual issues (*e.g.*,

infringement, level of skill in the art; applicable prior art if any), as well as claim construction questions, substantial judicial economy is achieved by maintaining the litigation against all the Defendants in one Court familiar with the patents and technologies.  ASUS pays cursory attention to this factor arguing in one sentence that "both Delaware and the Northern District of California have experience handling patent litigation."  D.I. 70 at 20.  This may be true, but it is neither economical nor efficient to require both Courts to handle and make rulings in the same lawsuit on the same products.

> **D.     Remaining Public Interest Factors Weigh Against Transfer**

As shown above, the Defendants are subject to personal jurisdiction in Delaware; thus, a judgment could be enforced here, and this factor is neutral.  Though defendants do not mention the factor concerning congestion of the courts, the time to trial in the District of Delaware for patent cases is likely to be shorter than the time to trial in the Northern District of California.  For example, a recent scholarly study determined that the average time to trial in the District of Delaware is 2.03 years as opposed to 2.92 years in the Northern District of California.  Ex. 12 at 18.  As such, this factor weighs against transfer.

*     *     *

In sum, the balance of factors does not strongly favor transfer of the claims against ASUS.

**X.     CONCLUSION**

ASUS is subject to personal jurisdiction in this Court for IpVenture's claims of patent infringement.  The allegations are consistent with applicable precedent, and joinder of ASUS with the other computer makers for what is believed to be the same infringement, is appropriate.  Severing ASUS from the litigation, and transferring claims against them, would be detrimental to the efficient and economical administration of this case.  IpVenture respectfully requests that the Court deny ASUS's motion so the parties can prepare their cases for resolution before the Court.[12]

---

[12] In the event that the Court is inclined to grant the motion to dismiss in whole or in part, IpVenture requests that the Court do so without prejudice and with leave to amend.  *Pa. Emp. Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 487 (D. Del. 2010).

OF COUNSEL:

/s/ Steven L. Caponi

Morgan Chu
Richard Birnholz
Babak Redjaian
Dorian Berger
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California  90067-4276

Dated: March 16, 2012.

Steven L. Caponi (I.D. No. 3483)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, Delaware  19801
(302) 425-6400

*Attorneys for Plaintiff IpVenture, Inc.*