IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IPVENTURE, INC.,                                      )
                                                      )
                    Plaintiff,                        )
                                                      )
          v.                                          )          C.A. No. 11-588-RGA
                                                      )
ACER, INC., ACER AMERICA                              )          **JURY TRIAL DEMANDED**
CORPORATION, GATEWAY, INC.,                           )
ASUSTEK COMPUTER INC.,                                )
ASUS COMPUTER INTERNATIONAL,                          )
DELL INC., FUJITSU LIMITED,                           )
FUJITSU AMERICA, INC.,                                )
LENOVO GROUP LIMITED, LENOVO                          )
(UNITED STATES) INC., SAMSUNG                         )
ELECTRONICS CO., LTD.,                                )
SAMSUNG ELECTRONICS AMERICA,                          )
INC., TOSHIBA CORPORATION,                            )
TOSHIBA AMERICA, INC., and                            )
TOSHIBA AMERICA INFORMATION,                          )
SYSTEMS INC.,                                         )
                                                      )
                    Defendants.                       )

**DEFENDANTS ASUSTEK COMPUTER INC. AND
ASUS COMPUTER INTERNATIONAL'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO SEVER AND TRANSFER**

ASHBY & GEDDES
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Andrew C. Mayo (I.D. #5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Of Counsel:*

John P. Schnurer
Michael J. Engle
PERKINS COIE LLP
11988 El Camino Real, Suite 200
San Diego, CA  92130
(858) 720-5700
jschnurer@perkinscoie.com
mengle@perkinscoie.com

*Attorneys for ASUSTeK Computer Inc. and
ASUS Computer International*

Dated: March 29, 2012

{00617830;v1 }

# TABLE OF CONTENTS

Page(s)

I. PERSONAL JURISDICTION ................................................................................ 1

    A. No Specific Jurisdiction for Actions of Third Parties ............................. 1

    B. IpVenture Has Not Shown ASUS California Is ASUSTeK Taiwan's Agent ........ 2

    C. No Specific Jurisdiction Over ASUS California .................................... 3

    D. IpVenture Did Not Plead Stream of Commerce in Its Complaint, and Has Not Shown the Facts Necessary in its Brief ........................................... 4

II. VENUE ................................................................................................. 6

III. FAILURE TO STATE A CLAIM ........................................................................ 6

    A. For Indirect Infringement, Plaintiff Has Not Identified *Any* Direct Infringer ................................................................................ 6

    B. IpVenture's Allegations Regarding Knowledge Are Frivolous ..................... 6

    C. IpVenture Entirely Ignores Multiple Elements of Indirect Infringement ......... 7

IV. SEVER ................................................................................................. 7

V. TRANSFER ............................................................................................. 8

    A. California Is More Convenient for Both Plaintiff and Defendant ................. 9

    B. Delaware Is Not IpVenture's Home Turf. ........................................... 9

    C. The Claims Arose in California. .................................................... 9

    D. California Is More Convenient for the Third-Party Witnesses. .................... 9

    E. IpVenture's Other Cases In Delaware Involve Unrelated Defendants with Unrelated Accused Products, and They Are In Their Infancy Stages. ............. 10

    F. The Relative Congestion of the Forums Is Neutral ............................... 10

VI. CONCLUSION ......................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

CASES

*Air Vent, Inc. v. Owens Corning Corp.*,
  No. 02:10–cv–01699, 2011 WL 2601043 (W.D. Pa. June 30, 2011) .......................6

*Akzona Inc. v. E.I. DuPont de Nemours & Co.*,
  607 F. Supp. 227 (D. Del. 1984) ....................................................................2

*Applied Biosystems, Inc. v. Cruachem, Ltd.*,
  772 F. Supp. 1458 (D. Del. 1991) ...............................................................2, 3

*Avocent Huntsville Corp. v. ATEN International Co.*,
  552 F.3d 1324 (Fed. Cir. 2008) ....................................................................5

*Boston Scientific Corp. v. Wall Cardiovascular Technology, LLC*,
  647 F. Supp. 2d 358 (D. Del. 2009) ..............................................................2

*Brandywine Commc'ns Techs., LLC. v. Audiovox Corp.*,
  No. 6:11-cv-1367, 2012 WL 527865 (M.D. Fla. Feb. 17, 2012) ...........................8

*Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.*,
  130 F. Supp. 2d 1152 (C.D. Cal. 2001) .........................................................7

*D'Jamoos v. Pilatus Aircraft Ltd.*,
  566 F.3d 94 (3d Cir. 2009) ...........................................................................5

*Dejana v. Marine Tech., Inc.*,
  No. 10-cv-4029(JS)(WDW), 2011 WL 4530012 (E.D.N.Y. Sept. 26, 2011) ...........5

*EON Corp. v. FLO TV Inc.*,
  802 F. Supp. 2d 527 (D. Del. 2011) ..............................................................7

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*,
  No. 03-612, 2004 WL 2346137 (D. Del. Sept. 13, 2004) ...............................3, 4

*Eastman Chem. Co. v. AlphaPet Inc.*,
  No. 09-971, 2011 WL 6004079 (D. Del. Nov. 4, 2011) .....................................6

*IpVenture, Inc. v. Cellco Partnership*,
  No. 10-04755, 2011 WL 207978 (N.D. Cal. Jan. 21, 2011) ...............................6

*J. McIntyre Mach., Ltd. v. Nicastro*,
  131 S. Ct. 2780 (2011) ...............................................................................5

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ...........................................................................9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**CASES**

*In re Link_A_Media Corp.*,
   662 F.3d 1221 (Fed. Cir. 2011)........................................................................9, 10

*MobileMedia Ideas LLC v. HTC Corp.*,
   No. 2:10-cv-112, 2010 WL 1484022 (E.D. Tex. Mar. 30, 2010)..............................6
   2011 WL 4347037 (E.D. Tex. Sept. 15, 2011)....................................................6

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   443 F. Supp. 2d 636 (D. Del. 2006).....................................................................5

*Oticon, Inc. v. Sebotek Hearing Sys., LLC*,
   --- F. Supp. 2d ---, 2011 WL 3702423 (D.N.J. 2011).............................................5

*Phoenix Canada Oil Co. v. Texaco, Inc.*,
   658 F. Supp. 1061 (D. Del. 1987)......................................................................2, 3

*Reach & Assocs. v. Dencer*,
   269 F. Supp. 2d 497 (D. Del. 2003).....................................................................3

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007)............................................................................7

*Sears, Roebuck & Co. v. Sears Plc*,
   744 F. Supp. 1297 (D. Del. 1990).....................................................................2, 3

*Sorensen v. DMS Holdings, Inc.*,
   No. 08CV559-BTM-CAB, 2010 WL 4909615 (S.D. Cal. Nov. 24, 2010) ................8

*Telcordia Techs., Inc. v. Alcatel USA, Inc.*,
   No. 04-874, 2005 WL 1268061 (D. Del. May 27, 2005) ........................................4

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
   676 F. Supp. 2d 321 (D. Del. 2009).....................................................................9

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
   735 F.2d 61 (3d Cir. 1984)..................................................................................4

*ThermaPure, Inc. v. Temp-Air, Inc.*,
   No. 10-cv-4724, 2010 WL 5419090 (N.D. Ill. Dec. 22, 2010)................................8

*Toys 'R' Us, Inc. v. Step Two, SA*,
   318 F.3d 446 (3d Cir. 2003).............................................................................3, 4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

CASES

*Trintec Indus., Inc. v. Pedre Prom. Prod., Inc.,*
    395 F.3d 1275 (Fed. Cir. 2005) ............................................................................2

*Wacoh Co. v. Kionix Inc.,*
    No. 10-617-RGA, 2012 WL 70673 (D. Del. Jan. 9, 2012).......................................9

*Xpoint Techs., Inc. v. Microsoft Corp.,*
    730 F. Supp. 2d 349 (D. Del. 2010)........................................................................7

*In re Zimmer Holdings, Inc.,*
    609 F.3d 1378 (Fed. Cir. 2010).............................................................................10

STATUTES

28 U.S.C. § 1400.......................................................................................................6

28 U.S.C. § 1404.......................................................................................................9

28 U.S.C. § 1406.......................................................................................................9

28 U.S.C. § 1631.......................................................................................................9

Del. Code Ann. tit. 10, § 3104...............................................................................1, 3

America Invents Act, 125 Stat. 284 (Sept. 16, 2011) ................................................8

OTHER AUTHORITIES

Federal Rule of Civil Procedure 15 ...........................................................................8

The ASUS Defendants' motion should be granted.  IpVenture concedes there is no general jurisdiction and instead relies primarily on a "stream of commerce" theory.  Yet it never pled stream of commerce and recent Supreme Court case law prevents its application here.

For venue, IpVenture again relies upon a statute it did not plead, yet even then, venue is improper for the same reasons as personal jurisdiction.

IpVenture does not bother addressing most of its deficiencies in failing to state a claim for indirect infringement or willfulness, and its assertion that the defendants should have known about their alleged infringement of the patents-in-suit based solely upon a third party news article about *other* companies, *other* patents, and *other* products lacks any basis in law or reason.

To join defendants in one case, the burden is on IpVenture to show how its claims against *all* defendants arise from the *same* transaction, the *same* accused product, and common questions of *fact* involving *all* defendants.  Here, the defendants are *competitors* and the accused products for each of the defendants are thus competing products, not the same.

Transfer is particularly appropriate here because the plaintiff IpVenture, defendant ASUS California, one of the two inventors, the prosecuting attorney, and third-party prior art witnesses are all located in the Northern District of California.  Not one witness, document, or third party is in Delaware.  Accordingly, if not dismissed, this case should be transferred to California.

## I.    PERSONAL JURISDICTION

### A.    No Specific Jurisdiction for Actions of Third Parties

Instead of arguing specific jurisdiction[1] based on actions of either *defendant*, IpVenture's argues the ASUS Defendants should be subject to specific jurisdiction because *non-parties*, such as Best Buy, may sell products in Delaware.  [D.I. 93 at 7.]  Yet IpVenture is not suing Best Buy, and there is no statutory basis for asserting the ASUS Defendants are subject to specific jurisdiction due to a non-party's actions.  Section 3104(c) expressly requires an action performed by the *defendant* or its *agent*.  The ASUS Defendants do not own or control non-party Best Buy,

---

[1] IpVenture never alleges general jurisdiction and has made no effort to establish either ASUS Defendant has the "systematic and continuous" contacts with Delaware required.

and IpVenture does not argue Best Buy is the ASUS Defendants' agent.[2] *Trintec Indus., Inc. v. Pedre Prom. Prod., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) ("Trintec refers to the availability of Pedre products on non-Pedre websites, but those sites would support jurisdiction only if Pedre had some responsibility for the third party's advertising of Pedre products on non-Pedre sites.").

### B.      IpVenture Has Not Shown ASUS California Is ASUSTeK Taiwan's Agent

With regard to ASUSTeK Taiwan, IpVenture argues that "the actions of ACI [i.e., ASUS California] must be imputed to the parent corporation ASUSTeK" because ASUS California is a "wholly-owned subsidiary." [D.I. 93 at 8.]  This is directly contrary to the corporate form and decades of Delaware precedent.[3]  Having "wholly owned subsidiaries....alone does not make a subsidiary the agent of its parent." *Phoenix Canada Oil Co. v. Texaco, Inc.*, 658 F. Supp. 1061, 1085 (D. Del. 1987).  Agency theory looks not at the *ability* to control, but rather the extent the parent actually *exercises* that ability. *Applied Biosys., Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991) ("the degree of control which the parent exercises over the subsidiary").

While IpVenture asserts "ACI's Chairman, Jonney Shih, is the chairman of ASUSTeK,"[4] [D.I. 93 at 8], IpVenture has not identified any other officers or employees that are shared, especially anyone in charge of day-to-day operations.  IpVenture's argument that a *current* director or officer of ASUS California *used to be* a director of ASUSTeK Taiwan *four years ago* fails as a matter of both fact (i.e., there is no overlap if the person is currently serving only one role) and law. *Akzona Inc. v. E.I. DuPont de Nemours & Co.*, 607 F. Supp. 227, 238 (D. Del. 1984) (finding no agency despite some overlap in the boards of directors).  Similarly, ASUSTeK Taiwan's inclusion of subsidiaries in its consolidated financial statements is required under GAAP and has no bearing on whether there is "pervasive interference" in day-to-day operations. *Id.* at 238 (finding no agency despite parent taking credit for subsidiary's projects in parent's

---

[2] IpVenture's apparent argument that non-party retailers being incorporated in Delaware or having stores in Delaware somehow affects personal jurisdiction over the ASUS Defendants is directly contrary to the law: "transacting business with a Delaware corporation outside of Delaware does not satisfy Delaware's long-arm statute." *Boston Sci. Corp. v. Wall Cardiovascular Tech., LLC*, 647 F. Supp. 2d 358, 366 (D. Del. 2009).
[3] IpVenture does not even attempt to argue under an "alter ego" theory, nor can it. *See, e.g., Sears, Roebuck & Co. v. Sears Plc*, 744 F. Supp. 1297, 1304 (D. Del. 1990).  Thus, the ASUS Defendants focus on agency theory here.
[4] The cited page actually identifies Jonney Shih as a *director* of ASUS California, not *Chairman*. [D.I. 94-1 at 16.]

annual report); *Sears*, 744 F. Supp. at 1306.[5]  While IpVenture vaguely asserts that ASUSTeK

Taiwan is "involved in the day to day operations of ACI," [D.I. 93 at 9], IpVenture does not offer

any explanation.  The only websites to which it points clearly delineate between "ASUSTeK

Computer Inc." (D.I. 94-8) and "ASUS Computer International" (D.I. 94-10).[6]

For example, IpVenture concedes [D.I. 93 at 8] and its own exhibits confirm that the

eStore [D.I. 94-10; 94-11] and warranty websites [D.I. 94-12] belong to "ASUS Computer

International," which is ASUS California, not ASUSTeK Taiwan.[7]  IpVenture has not challenged

ASUSTeK Taiwan's declaration that it sells its products in Asia, not Delaware.  [D.I. 68 ¶ 9.]

## C.     No Specific Jurisdiction Over ASUS California

For specific jurisdiction over ASUS California, IpVenture alleges that ASUS California

(1) "repairs computers in [sic] behalf of Delaware residents"; (2) "provides warranties for

computers sold in the district of Delaware"; (3) "markets products to Delaware residents"; and

(4) "sells refurbished computers directly to Delaware residents through its eShop." [D.I. 93 at

7.]  Each fails for lack of both relevance and lack of proof.

First, warranties and repairs are a non-starter.  Section 3104 applies only to "a cause of

action...*arising from*...the acts enumerated in this section."  IpVenture does not allege "repairs"

or "warranties" constitute patent infringement, so jurisdiction cannot be based on them.

---

[5] Despite IpVenture's citation, [D.I. 93 at 9], *Applied Biosystems* never discusses consolidated financial statements. The case once mentions "shared finances," 772 F. Supp. at 1464, but this refers to commingling funds (i.e., ignoring the corporate form). *See Reach & Assocs. v. Dencer*, 269 F. Supp. 2d 497, 506-7 (D. Del. 2003). The very website where IpVenture got the ASUS Defendants' annual reports clearly shows separate books are kept because financial statements are available for "parent only" (i.e., just ASUSTeK Taiwan) or "consolidated" with all subsidiaries. Exh. 1 to Engle Decl.; *Phoenix*, 658 F. Supp. at 1085 (no agency for wholly-owned sub when separate books are kept).
[6] In addition, "only the precise conduct shown to be instigated by the parent is attributed to the parent; the rest of the subsidiary's actions still pertain only to the subsidiary." *Applied Biosys.*, 772 F. Supp. at 1464. IpVenture has not offered any proof that ASUSTeK Taiwan "instigated" any contacts by ASUS California with Delaware.
[7] While IpVenture mentions in passing other websites with "marketing and specification documents relating to ASUS notebooks," [D.I. 93 at 6 n.5], it does not rely on those for jurisdiction. Even if the Court considers such websites, it is well settled that mere accessibility of a website does not confer jurisdiction. *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, No. 03-612, 2004 WL 2346137, at *3 (D. Del. Sept. 13, 2004). Moreover, national advertising, such as that alleged on ASUSTeK Taiwan's website, also does not constitute targeting Delaware. *Applied*, 772 F. Supp. at 1467 ("Advertising in widely distributed national magazines does not qualify as transacting business in Delaware."). Here, IpVenture has offered no proof that ASUSTeK Taiwan (as opposed to ASUS California) operates an interactive website, that IpVenture's claims of infringement arise out of ASUSTeK Taiwan's website, that ASUSTeK Taiwan carries out business in Delaware over the Internet, or that ASUSTeK Taiwan has specifically directed its website at Delaware. *Toys 'R'Us, Inc. v. Step Two, SA*, 318 F.3d 446, 454 (3d Cir. 2003).

Second, while IpVenture alleges ASUS California "markets products to Delaware residents," [D.I. 93 at 7], it fails to provide any citation or explanation. *Time Share Vac. Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). To the extent IpVenture is referring to "marketing" websites (though again leaving the Court and defendants to guess), such websites are not commercially interactive and hence cannot give rise to personal jurisdiction for the reasons discussed above. *eSpeed*, 2004 WL 2346137, at *3; *Toys'R'Us*, 318 F.3d at 454.

Third, IpVenture alleges that ASUS California sells "refurbished computers directly to Delaware residents" through its eStore.[8] [D.I. 93 at 7.] However, IpVenture's only exhibit indicates in bold that "[t]his product is no longer available" and has been "[d]iscontinued."[9] [D.I. 94-11.] Thus, IpVenture's best evidence is that no accused product is or ever was available for sale at the eStore to anyone, let alone actually been sold to someone in Delaware.

Having ignored its burden to provide *actual proof* or even identify *any* specific accused product sold in Delaware, IpVenture cannot now rely on mere speculation.[10]

## D. IpVenture Did Not Plead Stream of Commerce in Its Complaint, and Has Not Shown the Facts Necessary in its Brief

Clearly realizing the weakness of its specific jurisdiction argument, IpVenture next argues jurisdiction exists over the ASUS Defendants through a "stream-of-commerce" theory. [D.I. 93 at 9.] IpVenture's Complaint never mentions stream-of-commerce (let alone plead any facts for it), thus once again leaving the defendants to guess at IpVenture's unstated theories. Having not pled it, IpVenture should be barred from raising the theory for the first time here.

Even if considered, IpVenture's arguments crumble under scrutiny. While IpVenture argues "[t]he ASUS website provides a listing of resellers available in Delaware," [D.I. 93 at 9], the exhibit it cites as support never mentions Delaware, nor does it identify which resellers are in

---

[8] ASUS California's eStore primarily sells parts and accessories. IpVenture does not dispute that new computers are not available for purchase from the eStore, and none of the parts and accessories are accused of infringement.

[9] IpVenture also never identifies whether the computer in its exhibit (the K52JT-XC1) is actually accused or merely something allegedly sold in Delaware. This failure to identify the accused products is despite the defendants' express request that IpVenture "identify the products rather than leaving ASUS California to guess." [D.I. 66 at 7.]

[10] For the same reasons, jurisdictional discovery should be denied. "Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied." *Telcordia Techs., Inc. v. Alcatel USA, Inc.*, No. 04-874, 2005 WL 1268061, at *9 (D. Del. May 27, 2005).

Delaware. [D.I. 94-7.] The ASUS Defendants' website might list *national* resellers, but it never targets *Delaware*, and the Third Circuit, Federal Circuit, and Delaware courts all agree that targeting the U.S. as a whole does not constitute targeting one forum in particular.[11]

IpVenture's contention that a single sale is sufficient to establish specific jurisdiction was also rejected by the Supreme Court. [D.I. 93 at 8.] "None of our precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient. Rather, this Court's previous holdings suggest the contrary." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011) (Breyer, J., concurring); *see also Oticon, Inc. v. Sebotek Hearing Sys., LLC*, --- F. Supp. 2d ---, 2011 WL 3702423, at *10 (D.N.J. 2011) ("[W]hether it is five or nine sales by Sebotek of SDT's allegedly infringing products, that is simply too small of a number from which to conclude that SDT purposefully availed itself of the New Jersey market.").

Finally, all of IpVenture's arguments and cases regarding stream of commerce are moot in view of the Supreme Court's decision in *J. McIntyre*. Despite being a fractured decision, all agreed that a national market was insufficient. 131 S. Ct. at 2793 (rejecting assertion that "a producer is subject to jurisdiction...so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states") (Breyer, J., concurring). "[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 2789 (plurality). After *J. McIntyre*, "the national market theory is no longer viable." *Oticon*, 2011 WL 3702423, at *9; *Dejana v. Marine Tech., Inc.*, No. 10-cv-4029, 2011 WL 4530012, at *5-6 (E.D.N.Y. Sept. 26, 2011). IpVenture's reliance on a national market, with no evidence of the ASUS Defendants targeting Delaware in particular, is thus insufficient to meet its burden.[12]

---

[11] *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009) ("Pilatus's efforts to exploit a national market necessarily included Pennsylvania as a target, but those efforts simply do not constitute the type of deliberate contacts within Pennsylvania that could amount to purposeful availment."); *Avocent Hunts. Corp. v. ATEN Int'l Co.*, 552 F.3d 1324, 1340 (Fed. Cir. 2008) ("Avocent's allegation that Aten International products may be purchased in Alabama fails to establish...Aten International 'purposefully directed its activities at residents of the forum.'"); *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 646 (D. Del. 2006) ("mere placement of a product into the stream of commerce with an awareness that it may end up in a specific state is not enough").

[12] IpVenture's only post-*McIntyre* case did not find personal jurisdiction under a national market as IpVenture suggests, but rather granted very limited jurisdictional discovery to identify sales *by defendants* of products *in*

## II.    VENUE

For venue, IpVenture relies upon a statute (28 U.S.C. § 1400) it did not plead. [D.I. 93 at 11.] This yet again evidences IpVenture's strategy of making the Court and defendants guess its intentions rather than clearly pleading them.  For this reason and for the reasons set forth in the ASUS Defendants' opening brief, the Court should find that venue is improper.

## III.    FAILURE TO STATE A CLAIM

### A.    For Indirect Infringement, Plaintiff Has Not Identified *Any* Direct Infringer

IpVenture argues the statements "Defendants have employed the thermal management technologies patented by IpVenture to allow Defendants' products to perform as intended" and "lack substantial non-infringing uses" somehow inform ASUS that there is direct infringement by customers and users, but this makes no sense.  [D.I. 93 at 12.]  Those two sentences never mention "customers and users," nor does any other part of the Complaint.  Nor for that matter does IpVenture's Complaint or brief explain whether the direct infringer is a reseller such as Best Buy or the end user.  Yet again, IpVenture leaves the Court and defendants to guess its theories. *Air Vent, Inc. v. Owens Corning Corp.*, No. 02:10–cv–01699, 2011 WL 2601043, at *4 (W.D. Pa. June 30, 2011).  IpVenture's case law even holds exactly opposite what IpVenture cites it for. In *MobileMedia Ideas LLC v. HTC Corp.*, the complaint expressly said "providing *customers* with instructions." No. 2:10-cv-112, 2010 WL 1484022 ¶ 11 (E.D. Tex. Mar. 30, 2010); 2011 WL 4347037, at *3.  IpVenture does not even address that identical indirect infringement allegations were dismissed as insufficient in one of IpVenture's other cases. *IpVenture, Inc. v. Cellco P'ship*, No. 10-04755, 2011 WL 207978, at *2 (N.D. Cal. Jan. 21, 2011).

### B.    IpVenture's Allegations Regarding Knowledge Are Frivolous

IpVenture's arguments regarding knowledge are especially frivolous.  Unlike the other defendants, IpVenture does not allege it ever sent a letter to the ASUS Defendants, nor that the ASUS Defendants ever cited any patent-in-suit in their own applications.  Instead, without any supporting cases, IpVenture relies exclusively on *non-ASUS* "articles and press releases" with no

---

*Delaware. Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-971, 2011 WL 6004079, at *18 (D. Del. Nov. 4, 2011).

evidence the ASUS Defendants ever saw those documents, had any reason to know about those documents, had any reason to associate those documents with patents that did not even exist yet, or had any reason to know based on those documents that the ASUS Defendants allegedly infringed patents that did not exist yet.[13] IpVenture's frivolous allegations of knowledge must be rejected. *EON Corp. v. Flo TV Inc.*, 802 F. Supp. 2d 527, 532-33 (D. Del. 2011).

While IpVenture argues its Complaint supports knowledge after the date of filing, that contradicts both its Complaint (alleging knowledge since July 2009) and the Federal Circuit. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (en banc) ("a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct"); *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010) ("knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement"). Even the non-Delaware cases cited by IpVenture granted *summary judgment* for indirect infringement before the filing of the complaint, a result which IpVenture has not offered here. *E.g.*, *Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.*, 130 F. Supp. 2d 1152, 1166 (C.D. Cal. 2001).

  **C. IpVenture Entirely Ignores Multiple Elements of Indirect Infringement**

IpVenture does not even bother addressing many of the fundamental elements of indirect infringement the ASUS Defendants raised. IpVenture has not identified what acts of the ASUS Defendants allegedly constitute inducement or contributory infringement, despite such acts being the central element of any claim. For contributory infringement, IpVenture has failed to identify either what the "component" is or what the larger "patented machine" is. Without having addressed such basic elements, IpVenture's indirect infringement claims must be dismissed.

**IV. SEVER**

If the Court does not dismiss the case outright, it should dismiss the ASUS Defendants or sever the case against them due to improper joinder. IpVenture has not satisfied and cannot

---

[13] It also appears that IpVenture did not want others to know about its patent applications given that IpVenture expressly requested that at least one of the applications not be published. Exh. 2 to Engle Decl.

satisfy the tests for (1) "**same** transaction"; (2) "**same** accused product"; **and** (3) "questions of fact common to **all** defendants." IpVenture's claims against the various defendants arise from *different* transactions involving *different* accused products without questions of *fact* common to *all* defendants. IpVenture's arcane cases from other circuits are moot given the AIA.[14]

While IpVenture alleges *some* defendants may use the same *manufacturer* for some products, it has failed explain how *all* defendants have the same *product*, especially given the defendants compete in the market. *Sorensen v. DMS Holdings, Inc.*, No. 08CV559-BTM-CAB, 2010 WL 4909615, at *1 (S.D. Cal. Nov. 24, 2010) ("[A]lleging a common manufacturer and infringement of the same patent is not enough to support joinder where defendants are unrelated companies, selling different products."); *Brandywine Commc'ns Techs., LLC. v. Audiovox Corp.*, No. 6:11-cv-1367, 2012 WL 527865, at *1 (M.D. Fla. Feb. 17, 2012) ("[W]hile the Plaintiff identifies *some* products which appear to be related to one or more Defendants, it fails to identify any product common to *all* the named Defendants.") (emphasis added).

IpVenture alleges the defendants use the "same microprocessors, fans, operating system and cooling technologies," [D.I. 93 at 16], but never identifies *any* specific components, leaving the Court and defendants to guess what sort of fan or "cooling technology" it believes is common to all defendants. To the extent it identifies a broad category, such as Intel processors, it never limits the accused products to that category (e.g., leaving open that AMD processors are also accused). *ThermaPure, Inc. v. Temp-Air, Inc.*, No. 10-cv-4724, 2010 WL 5419090, at *5 (N.D. Ill. Dec. 22, 2010) ("If the court were to allow [plaintiff's] claims to go forward together against all of the defendants, only to discover later that the products or methods differ significantly, then [plaintiff] would benefit from its own recalcitrance at defendants' and the court's expense.").

## V.   TRANSFER

Because this Court lacks personal jurisdiction, the Court *must* dismiss or transfer.  28

---

[14] Section 19(e) of the AIA expressly states that "[t]he amendments made by this section shall apply to any civil action commenced on or after the date of the enactment of this Act" (i.e., September 16, 2011). Because IpVenture named the ASUS Defendants for the first time in its amended complaint of November 28, 2011, [D.I. 36], IpVenture cannot relate its amended complaint back to its original complaint. Fed. R. Civ. P. 15(c)(1). Thus, IpVenture's action against the ASUS Defendants was commenced after the AIA was enacted and the AIA's joinder rules apply.

U.S.C. §§ 1406(a), 1631.  Yet even under *Jumara* factors of § 1404(a), transfer is appropriate.

### A.    California Is More Convenient for Both Plaintiff and Defendant

In *Link_A_Media*, the Federal Circuit ordered the Delaware court to transfer the case to

the Northern District of California because both the plaintiff and the defendant were based there.

*In re Link_A_Media Devs. Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011).  The same is true here.

Plaintiff IpVenture and defendant ASUS California are both California corporations with their

principal places of business in the Northern District of California.  [D.I. 36 ¶ 1; D.I. 69 ¶ 14.]

IpVenture's founder, including a named inventor and the prosecuting attorney, are in the

Northern District of California.  [D.I. 93 at 4.]  Thus, the parties are in California.

### B.    Delaware Is Not IpVenture's Home Turf.

With no employees or place of business in the state, Delaware is not IpVenture's home

turf and thus this factor is entitled to little or no weight.  *Link_A_Media*, 662 F.3d at 1223.

### C.    The Claims Arose in California.

To the extent IpVenture argues a trivial number of sales arose in Delaware, [D.I. 69 ¶ 11

("less than 0.02% of ASUS California's total revenue")], that pales in comparison to the nearly

100% of sales made from ASUS California's headquarters in Fremont, California.

### D.    California Is More Convenient for the Third-Party Witnesses.

The ASUS Defendants identified more than 40 prior art witnesses in the Northern District

of California.[15]  [D.I. 66 at 17-18.]  By contrast, IpVenture has not identified a single witness in

Delaware.[16]  "The fact that plaintiff has not identified a single material witness who resides in

Delaware rather than California is telling and weighs in favor of transfer."  *Teleconference Sys.*

*v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 333 (D. Del. 2009)

---

[15] This Court has also said, "Ex-employees (and, with the passage of time from now until trial, it is possible, if not probable, that some employees will become ex-employees) would not be subject to this Court's subpoena power, but would likely not move out-of-state and therefore would continue to be subject to the subpoena power in the Northern District of California." *Wacoh Co. v. Kionix Inc.*, No. 10-617-RGA, 2012 WL 70673 at *4 (D. Del. 2012).

[16] While IpVenture has identified one potential witness in New Jersey (not Delaware), that witness is the father of the founder of IpVenture, [D.I. 93 at 4], and there is no reason to believe he would not make himself available for his son's litigation regardless of the forum.  By contrast, prior art witnesses in California with no blood relations involved in the litigation very likely would object to traveling more than 2,000 miles to Delaware.

### E.     IpVenture's Other Cases In Delaware Involve Unrelated Defendants with Unrelated Accused Products, and They Are In Their Infancy Stages.

As discussed above IpVenture makes vague assertions about "significant overlap and commonalities between defendants," [D.I. 93 at 16], but fails to provide a *single fact* supporting that contention. The *facts* are that none of the defendants are related to the ASUS Defendants and the accused products between defendants are *competing* products that are far from identical.

Delaware also has no more experience with the patents than California because this case is in the "infancy stages of litigation," with none of the defendants having yet filed an answer. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010). It is speculative to assume that any—let alone all—of the cases will proceed in Delaware. For example, Fujitsu has already settled, Dell has moved to transfer, and Acer America and Gateway are based in California.

### F.     The Relative Congestion of the Forums Is Neutral

IpVenture's citation to a law review article is interesting given the article is about "forum shopping." [D.I. 94-17.] IpVenture thus seemingly admits it has no ties to this forum other than wanting to "forum shop." [D.I. 94-17.] Nevertheless, the Federal Circuit expressly rejected the contention that this factor favors Delaware over California: "There is no evidence, moreover, that the District of Delaware's acknowledged experience in this area translates to speedier resolution of patent cases than occurs in the Northern District of California."[17] *Link_A_Media*, 662 F.3d at 1224. Thus, this factor is neutral or even favors transfer given newer statistics.

## VI.     CONCLUSION

For the reasons above and in their opening brief, the ASUS Defendants respectfully request that the Court dismiss this case for lack of personal jurisdiction, improper venue, failure to state a claim, and misjoinder. In the alternative, the ASUS Defendants respectfully request that this case be severed and transferred to the Northern District of California, which is significantly more convenient for the parties and the third-parties.

---

[17] IpVenture also relies on old statistics from 2000 to March 2010, [D.I. 94-17 at 5], whereas newer statistics show that the number of patent cases filed in Delaware have skyrocketed since the enactment of the AIA in September 2011. Exh. 3 to Engle Decl. at Table 5 (showing 206 patent cases filed in Delaware versus only 68 in N.D. Cal. from Sept. 16 to Dec. 31, 2011). The difference is even more dramatic given that Delaware has only four judgeships (~52 cases/judge) compared to the Northern District of California's fourteen judgeships (~5 cases/judge).

ASHBY & GEDDES

*/s/ John G. Day*

_____
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Andrew C. Mayo (I.D. #5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for ASUSTeK Computer Inc. and*
*ASUS Computer International*

*Of Counsel:*

John P. Schnurer
Michael J. Engle
PERKINS COIE LLP
11988 El Camino Real, Suite 200
San Diego, CA 92130
(858) 720-5700
jschnurer@perkinscoie.com
mengle@perkinscoie.com

Dated: March 29, 2012